# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America
and the State of Minnesota
ex rel. William L. Schwandt,

        Plaintiffs and Relator,

v.

Complementary Support Services,
CSS South, LLC, CSS Central, LLC,
CSS North, LLC, and CSS Metro, LLC,

        Defendants.

Court File No.: _____

**COMPLAINT FILED UNDER SEAL**
**JURY TRIAL DEMANDED**

---

## NATURE OF THE ACTION

1.     Qui tam Plaintiff and Relator, Mr. William L. Schwandt ("Relator"),
prosecutes this action against Defendants Complementary Support Services, CSS South,
LLC, CSS Central, LLC, CSS North, LLC, and CSS Metro, LLC ("Defendants") on
behalf of Plaintiff United States of America and Plaintiff State of Minnesota for
fraudulent billing policies, procedures, and practices regarding children's therapeutic
services and supports within the meaning of Minn. Stat. § 256B.0943 and related
provisions, in violation of the Federal False Claims Act, 31 U.S.C. §§ 3729, et seq.
("FFCA") and the Minnesota False Claims Act, Minn. Stat. §§ 15C.01, et seq.
("MFCA").

## JURISDICTION

2.    This Court has subject matter jurisdiction over the Federal law claims herein pursuant to 28 U.S.C. §§ 1331 and 1345 as well as 31 U.SC. § 3732(a), which specifically confers jurisdiction on this Court for actions prosecuted under 31 U.S.C. §§ 3729 and 3730.

3.    This Court has supplemental jurisdiction over the State law claims herein pursuant to 28 U.S.C. §1367 and 31 U.S.C. § 3732(b) because the Federal law and State law claims are so interrelated that they form part of the same case and controversy under Article III of the United States Constitution.

## VENUE

4.    Pursuant to 28 U.S.C. §1391(b) and 31 U.S.C. § 3732(a), this Court has personal jurisdiction over Defendants and venue is proper because Defendants have their headquarters and transact substantial business in this District and, moreover, because Defendants have committed acts proscribed by 31 U.S.C. § 3729 in this District.

## ORIGINAL SOURCE FOR ALLEGATIONS HEREIN

5.    With respect to 31 U.S.C. § 3730(e) and Minn. Stat. § 15C.05, no statutorily relevant public disclosure of allegations or transactions set forth herein has occurred.

6.    During his years attending regular staff meetings, reviewing numerous e-mail correspondence and other business records to which he properly had access, and otherwise working with management while employed by Defendants, Relator acquired

independent and direct knowledge of the information on which allegations herein are based.

7.      Relator voluntarily provided the above-referenced information to Plaintiff United States of America and Plaintiff State of Minnesota before filing the above-captioned action.

8.      Before Relator's voluntary disclosure to them, Plaintiff United States of America and Plaintiff State of Minnesota did not possess the information that forms the basis of allegations herein.

9.      In conformity with 31 U.S.C. § 3730(b)(2) and Minn. Stat. § 15C.05, Relator properly and timely served Plaintiff United States of America and Plaintiff State of Minnesota with a written Disclosure Statement to provide all material information he possesses at this time in support of allegations set forth herein.

10.     Relator is an original source within the meaning of the FFCA and the MFCA.

## PARTIES

**Plaintiff United States of America**

11.     Relator prosecutes this case on behalf of Plaintiff United States of America to remedy the violations of the FFCA perpetrated by Defendants against Plaintiff United States of America, as set forth more fully herein.

**Plaintiff State of Minnesota**

12.     Relator prosecutes this case on behalf of Plaintiff State of Minnesota to remedy the violations of the MFCA perpetrated by Defendants against Plaintiff State of

Minnesota, as set forth more fully herein.

**Relator William L. Schwandt**

13.     Relator William L. Schwandt is a citizen of the United States of America and a resident of the State of Minnesota.

14.     Relator has worked in the child-therapy field for nearly 25 years.

15.     Relator provided children's therapeutic service and supports – principally to families with children receiving mental health services via an array of treatment modalities in accordance with the children's respective treatment plans – as an employee of Defendants from 2009 to 2012.

16.     Relator provided those children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

17.     Throughout his tenure, Relator did not observe any change in ownership, operations, management, supervision, labor relations, equipment, business purpose, market area, or customers as they related to his employment or Defendants in general.

**Defendant Complementary Support Services**

18.     Defendant Complementary Support Services ("CSS") is a non-profit corporation established and conducting business in the State of Minnesota.

19.     Defendant CSS was incorporated in 2001.

20.     Defendant CSS was incorporated by Ms. Teri Dimond, President and Director of the organization.

21.     Attached hereto as Exhibit 1 and incorporated herein is a true and correct copy of Defendant CSS's corporate filings.

22. Defendant CSS provides children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

23. Of all Defendants herein, only Defendant CSS is designated as a certified children's therapeutic services and supports provider and, therefore, as eligible to receive medical assistance payments in accordance with Minn. Stat. § 256B.0943, Subd. 2 and related provisions.

24. Of all Defendants herein, only Defendant CSS has a provider number for purposes of making claims for approval and payment by Plaintiff United States of America and/or Plaintiff State of Minnesota regarding the provision of children's therapeutic services and supports.

25. Attached hereto as Exhibit 2 and incorporated herein is a true and correct copy of the Minnesota Department of Human Services list of entities designated as certified children's therapeutic services and supports providers in the State of Minnesota.

26. Defendant CSS provides children's therapeutic services and supports across the State of Minnesota, including in the Counties of Anoka, Carver, Chisago, Dakota, Hennepin, Isanti, McLeod, Mille Lacs, Pine, Ramsey, Scott, Sherburne, St. Louis, and Washington.

27. Attached hereto as Exhibit 3 and incorporated herein is a true and correct copy of Defendant CSS's webpage describing the geographic scope of the children's therapeutic services and supports provided by Defendant CSS.

28. Defendant CSS established and maintains a web-based portal for Defendants' employees to generate, consult, and update treatment records for billing

purposes and otherwise regarding recipients of children's therapeutic services and supports.

29.     Attached hereto as Exhibit 4 and incorporated herein is a true and correct copy of the web-based portal established and maintained by Defendant CSS for Defendants' employees to provide children's therapeutic services and supports.

30.     Defendant CSS regularly compels Defendants' employees to attend mandatory work-related trainings provided by Defendant CSS around the State of Minnesota to ensure that Defendants' employees provide children's therapeutic services and supports in accordance with Defendant CSS's policies, procedures, and practices.

31.     Minnesota law, at Minn. Stat. § 256B.0943, Subd. 8, requires such compulsory trainings by Defendant CSS – which Defendant CSS's President and Director often personally orders Defendants' employees to attend.

32.     Attached hereto as Exhibit 5 and incorporated herein is a true and correct copy of e-mail correspondence, dated May 3, 2011, from Defendant CSS's President and Director regarding mandatory work-related trainings provided by Defendant CSS to Defendants' employees.

33.     Defendant CSS established and maintains a website to obtain financial support, to communicate with clients, and otherwise to enable Defendants' employees to provide children's therapeutic services and supports.

34.     Attached hereto as Exhibits 6-7 and incorporated herein is a true and correct copy of the charitable-donation portal and the client-referral portal, respectively, maintained on the Defendant CSS website.

35.     Defendant CSS established and maintains a Facebook page and a LinkedIn page for similar purposes as Defendant CSS established and maintains a website.

36.     The most prominent online presence established and maintained by Defendant CSS is found at the following locations:  www.css-web.org (website); http://www.facebook.com/pages/Complementary-Support-Services/120889717990439 (Facebook page); and http://www.linkedin.com/company/complementary-support-services (LinkedIn page).

37.     Of all Defendants herein, only Defendant CSS has a website; only Defendant CSS has a Facebook page; only Defendant CSS has a LinkedIn page; and only Defendant CSS has an employee e-mail list.

38.     Attached hereto as Exhibit 8 and incorporated herein is a true and correct copy of correspondence, dated June 20, 2011, referencing Defendant CSS's employee e-mail list.

39.     As set forth more fully herein, Defendant CSS establishes, implements, and enforces policies, procedures, and practices that govern Defendants' employees, whether the employees work in the South Region, in the Central Region, in the North Region, or in the Metro Region.

40.     Attached hereto as Exhibits 9-10 and incorporated herein is a true and correct copy of correspondence, dated April 7, 2010, April 13, 2010, and April 19, 2010, concerning mandatory meetings that Defendant CSS's President and Director required employees to attend regarding employment forms and employee benefits.

41.     The policies, procedures, and practices established, implemented, and

enforced by Defendant CSS regarding Defendants' employees include the billing policies, procedures, and practices as to children's therapeutic services and supports that form the basis of allegations herein.

42. Attached hereto as Exhibit 11 and incorporated herein is a true and correct copy of correspondence, dated January 30, 2012, explaining how the billing process works based on the progress notes prepared by Defendants' employees in connection with service visits.

43. That correspondence states, in pertinent part, as follows: "'sign and leave pending' – this is only used for progress notes. The reason for this is b/c it flags to [Defendant CSS's President and Director] that she needs to review and sign it. Once she signs it, it is then sent off for billing."

44. Defendant CSS handles the job-application, employee-screening, and hiring processes for Defendants by, for example, soliciting and reviewing applications regarding supervisory positions.

45. Attached hereto as Exhibit 12 and incorporated herein is a true and correct copy of a job listing for a Program Director position posted by Defendant CSS with the Minnesota Council of Nonprofits.

46. Defendant CSS handles the employee-evaluation responsibilities imposed by the State of Minnesota regarding Defendants' employees.

47. Attached hereto as Exhibits 13-14 and incorporated herein is a true and correct copy of correspondence, dated June 3, 2012 and July 26, 2012, from Defendant CSS's President and Director and a Program Director, respectively, concerning

mandatory employee evaluations.

48.     Defendant CSS provides employee benefits and bonuses to Defendants' employees.

49.     Attached hereto as Exhibits 15-17 and incorporated herein is a true and correct copy of correspondence, dated January 30, 2010, November 19, 2010, and December 16, 2010, from Defendant CSS's President and Director regarding the provision of employee benefits and a holiday bonus, respectively.

50.     On information and belief, Defendant CSS controls and even possesses the income, if any, received at any given time by the other Defendants herein.

51.     Defendant CSS has approximately $4,000,000 in reported annual income.

52.     On information and belief, Defendant CSS controls and even possesses the equipment and other assets, if any, of the other Defendants herein at any given time.

53.     Defendant CSS has approximately $2,500,000 in total reported assets – as a non-profit corporation with a virtual-office structure.

54.     On information and belief, Defendant CSS created and dominates in all material respects the other Defendants herein.

55.     Attached hereto as Exhibit 18 and incorporated herein is a true and correct copy of correspondence, dated April 30, 2012, directing purported employees of Defendant CSS South – in the absence of the purported Program Director of Defendant CSS South – to consult about work-related matters with the Program Director purportedly of Defendant CSS Central or the Program Director purportedly of Defendant CSS Metro.

56.     As set forth more fully herein, Defendant CSS is an alter ego of, integrated

enterprise with, and otherwise acts as an agent and directly in the interest of all other Defendants herein regarding Plaintiff United States of America and Plaintiff State of Minnesota.

**Defendant CSS South, LLC**

57.     Defendant CSS South, LLC ("CSS South") is a limited liability company registered in Minnesota.

58.     Defendant CSS South was organized in 2010.

59.     Defendant CSS South, on paper, was organized by Mr. Larry Celander.

60.     For purposes of organizing Defendant CSS South and filing legally required papers with the State of Minnesota, Mr. Celander identified himself as located at his then apparent home address:  1612 Southview Boulevard, South St. Paul, MN 55075.

61.     For purposes of organizing Defendant CSS South and filing legally required papers with the State of Minnesota, Mr. Celander identified Defendant CSS South – and the registered Manager of Defendant CSS South, Business Trust of CSS – as located at his business address: 207 5th Avenue North, Minneapolis, MN 55401.

62.     Mr. Celander works at a business-formation and accounting firm, Lillian + Burg, Ltd., which occupies and conducts business at 207 5th Avenue North, Minneapolis, MN 55401.

63.     A founder – and the Managing Principle – of Lillian + Burg, Ltd., Mr. Ronald Burg, has reportedly served on the Board of Directors of Defendant CSS and otherwise provided business-formation and accounting counsel to Defendant CSS during the relevant time.

64.    For example, Mr. Burg conducted meetings for Defendant CSS's employees about retirement benefits for which they were eligible.

65.    Attached hereto as Exhibit 19 and incorporated herein is a true and correct copy of correspondence, dated November 10, 2010, recording Mr. Burg's involvement in meetings with Defendant CSS's employees.

66.    The Business Trust of CSS that Lillian + Burg, Ltd. purportedly created under Minn. Stat. § 318.01 is, on information and belief, an association of Defendant CSS and Defendant CSS South to provide children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

67.    Minnesota law, at Minn. Stat. § 318.02, Subd. 1, requires a business trust to file a declaration of trust as well as the identity and location of the business trust's agent with the Office of the Secretary of State of the State of Minnesota before that business trust can conduct business in the State of Minnesota.

68.    Minnesota law, at Minn. Stat. § 318.05, prohibits any business trust from conducting business in the State of Minnesota without first filing a declaration of trust with the Office of the Secretary of State of the State of Minnesota.

69.    Demonstrating disregard for legal requirements and corporate form, no declaration of trust has been filed with the Office of the Secretary of State of the State of Minnesota regarding Business Trust of CSS as to Defendant CSS South or otherwise.

70.    In addition, neither the identity nor the location of any agent of the Business Trust of CSS as to Defendant CSS South or otherwise has been provided to the Office of the Secretary of State of the State of Minnesota.

71.     Attached hereto as Exhibit 20 and incorporated herein is a true and correct copy of Defendant CSS South's corporate filings.

72.     In or after 2010, Defendant CSS South began to appear on paychecks for Relator in connection with children's therapeutic services and supports provided by Relator during his employment with Defendants.

73.     Attached hereto as Exhibit 21 and incorporated herein is a true and correct copy of a paycheck stub, dated August 22, 2012, concerning Relator.

74.     As set forth more fully herein, Defendant CSS South is an alter ego of, integrated enterprise with, and otherwise acts as an agent and directly in the interest of all other Defendants herein regarding Plaintiff United States of America and Plaintiff State of Minnesota.

**Defendant CSS Central, LLC**

75.     Defendant CSS Central, LLC ("CSS Central") is a limited liability company registered in Minnesota.

76.     Defendant CSS Central was organized in 2010.

77.     Defendant CSS Central, on paper, was organized by Mr. Celander.

78.     For purposes of organizing Defendant CSS Central and filing legally required papers with the State of Minnesota, Mr. Celander identified himself as located at his then apparent home address:  1612 Southview Boulevard, South St. Paul, MN 55075.

79.     For purposes of organizing Defendant CSS Central and filing legally required papers with the State of Minnesota, Mr. Celander identified Defendant CSS Central – and the registered Manager of Defendant CSS Central, Business Trust of CSS –

as located at his business address:  207 5th Avenue North, Minneapolis, MN 55401.

80.     Mr. Celander works at a business-formation and accounting firm, Lillian + Burg, Ltd., which occupies and conducts business at 207 5th Avenue North, Minneapolis, MN 55401.

81.     A founder – and the Managing Principle – of Lillian + Burg, Ltd., Mr. Burg, has reportedly served on the Board of Directors of Defendant CSS and otherwise provided business-formation and accounting counsel to Defendant CSS during the relevant time.

82.     For example, Mr. Burg conducted meetings for Defendant CSS's employees about retirement benefits for which they were eligible.

83.     Attached hereto as Exhibit 19 and incorporated herein is a true and correct copy of correspondence, dated November 10, 2010, recording Mr. Burg's involvement in meetings with Defendant CSS's employees.

84.     The Business Trust of CSS that Lillian + Burg, Ltd. purportedly created under Minn. Stat. § 318.01 is, on information and belief, an association of Defendant CSS and Defendant CSS Central to provide children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

85.     Minnesota law, at Minn. Stat. § 318.02, Subd. 1, requires a business trust to file a declaration of trust as well as the identity and location of the business trust's agent with the Office of the Secretary of State of the State of Minnesota before that business trust can conduct business in the State of Minnesota.

86.     Minnesota law, at Minn. Stat. § 318.05, prohibits any business trust from

conducting business in the State of Minnesota without first filing a declaration of trust

with the Office of the Secretary of State of the State of Minnesota.

87.     Demonstrating disregard for legal requirements and corporate form, no

declaration of trust has been filed with the Office of the Secretary of State of the State of

Minnesota regarding Business Trust of CSS as to Defendant CSS Central or otherwise.

88.     In addition, neither the identity nor the location of any agent of the

Business Trust of CSS as to Defendant CSS Central or otherwise has been provided to

the Office of the Secretary of State of the State of Minnesota.

89.     Attached hereto as Exhibit 22 and incorporated herein is a true and correct

copy of Defendant CSS Central's corporate filings.

90.     As set forth more fully herein, Defendant CSS Central is an alter ego of,

integrated enterprise with, and otherwise acts as an agent and directly in the interest of all

other Defendants herein regarding Plaintiff United States of America and Plaintiff State

of Minnesota.

**Defendant CSS North, LLC**

91.     Defendant CSS North, LLC ("CSS North") is a limited liability company

registered in Minnesota.

92.     Defendant CSS North was organized in 2010.

93.     Defendant CSS North, on paper, was organized by Mr. Celander.

94.     For purposes of organizing Defendant CSS North and filing legally

required papers with the State of Minnesota, Mr. Celander identified himself as located at

his then apparent home address:  1612 Southview Boulevard, South St. Paul, MN 55075.

95.    For purposes of organizing Defendant CSS North and filing legally required papers with the State of Minnesota, Mr. Celander identified Defendant CSS North – and the registered Manager of Defendant CSS North, Business Trust of CSS – as located at his business address:  207 5th Avenue North, Minneapolis, MN 55401.

96.    Mr. Celander works at a business-formation and accounting firm, Lillian + Burg, Ltd., which occupies and conducts business at 207 5th Avenue North, Minneapolis, MN 55401.

97.    A founder – and the Managing Principle – of Lillian + Burg, Ltd., Mr. Burg, has reportedly served on the Board of Directors of Defendant CSS and otherwise provided business-formation and accounting counsel to Defendant CSS during the relevant time.

98.    For example, Mr. Burg conducted meetings for Defendant CSS's employees about retirement benefits for which they were eligible.

99.    Attached hereto as Exhibit 19 and incorporated herein is a true and correct copy of correspondence, dated November 10, 2010, recording Mr. Burg's involvement in meetings with Defendant CSS's employees.

100.    The Business Trust of CSS that Lillian + Burg, Ltd. purportedly created under Minn. Stat. § 318.01 is, on information and belief, an association of Defendant CSS and Defendant CSS North to provide children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

101.    Minnesota law, at Minn. Stat. § 318.02, Subd. 1, requires a business trust to file a declaration of trust as well as the identity and location of the business trust's agent

with the Office of the Secretary of State of the State of Minnesota before that business trust can conduct business in the State of Minnesota.

102.   Minnesota law, at Minn. Stat. § 318.05, prohibits any business trust from conducting business in the State of Minnesota without first filing a declaration of trust with the Office of the Secretary of State of the State of Minnesota.

103.   Demonstrating disregard for legal requirements and corporate form, no declaration of trust has been filed with the Office of the Secretary of State of the State of Minnesota regarding Business Trust of CSS as to Defendant CSS North or otherwise.

104.   In addition, neither the identity nor the location of any agent of the Business Trust of CSS as to Defendant CSS North or otherwise has been provided to the Office of the Secretary of State of the State of Minnesota.

105.   Attached hereto as Exhibit 23 and incorporated herein is a true and correct copy of Defendant CSS North's corporate filings.

106.   As set forth more fully herein, Defendant CSS North is an alter ego of, integrated enterprise with, and otherwise acts as an agent and directly in the interest of all other Defendants herein regarding Plaintiff United States of America and Plaintiff State of Minnesota.

**Defendant CSS Metro, LLC**

107.   Defendant CSS Metro, LLC ("CSS Metro") is a limited liability company registered in Minnesota.

108.   Defendant CSS Metro was organized in 2010.

109.   Defendant CSS Metro, on paper, was organized by Mr. Celander.

110.   For purposes of organizing Defendant CSS Metro and filing legally required papers with the State of Minnesota, Mr. Celander identified himself as located at his then apparent home address:  1612 Southview Boulevard, South St. Paul, MN 55075.

111.   For purposes of organizing Defendant CSS Metro and filing legally required papers with the State of Minnesota, Mr. Celander identified Defendant CSS Metro – and the registered Manager of Defendant CSS Metro, Business Trust of CSS – as located at his business address:  207 5th Avenue North, Minneapolis, MN 55401.

112.   Mr. Celander works at a business-formation and accounting firm, Lillian + Burg, Ltd., which occupies and conducts business at 207 5th Avenue North, Minneapolis, MN 55401.

113.   A founder – and the Managing Principle – of Lillian + Burg, Ltd., Mr. Burg, has reportedly served on the Board of Directors of Defendant CSS and otherwise provided business-formation and accounting counsel to Defendant CSS during the relevant time.

114.   For example, Mr. Burg conducted meetings for Defendant CSS's employees about retirement benefits for which they were eligible.

115.   Attached hereto as Exhibit 19 and incorporated herein is a true and correct copy of correspondence, dated November 10, 2010, recording Mr. Burg's involvement in meetings with Defendant CSS's employees.

116.   The Business Trust of CSS that Lillian + Burg, Ltd. purportedly created under Minn. Stat. § 318.01 is, on information and belief, an association of Defendant CSS and Defendant CSS Metro to provide children's therapeutic services and supports

within the meaning of Minn. Stat. § 256B.0943 and related provisions.

117.   Minnesota law, at Minn. Stat. § 318.02, Subd. 1, requires a business trust to file a declaration of trust as well as the identity and location of the business trust's agent with the Office of the Secretary of State of the State of Minnesota before that business trust can conduct business in the State of Minnesota.

118.   Minnesota law, at Minn. Stat. § 318.05, prohibits any business trust from conducting business in the State of Minnesota without first filing a declaration of trust with the Office of the Secretary of State of the State of Minnesota.

119.   Demonstrating disregard for legal requirements and corporate form, no declaration of trust has been filed with the Office of the Secretary of State of the State of Minnesota regarding Business Trust of CSS as to Defendant CSS Metro or otherwise.

120.   In addition, neither the identity nor the location of any agent of the Business Trust of CSS as to Defendant CSS Metro or otherwise has been provided to the Office of the Secretary of State of the State of Minnesota.

121.   Attached hereto as Exhibit 24 and incorporated herein is a true and correct copy of Defendant CSS Metro's corporate filings.

122.   As set forth more fully herein, Defendant CSS Metro is an alter ego of, integrated enterprise with, and otherwise acts as an agent and directly in the interest of all other Defendants herein regarding Plaintiff United States of America and Plaintiff State of Minnesota.

## MATERIAL FACTS

**Children's Therapeutic Services And Supports**

123.    For many years, Plaintiff United States of America and Plaintiff State of Minnesota each have paid several million dollars annually under the joint Federal-State funded Medicaid program to entities providing medical assistance to needy persons in the State of Minnesota.

124.    Children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions, which are offered by Defendants and other entities in the State of Minnesota, are among the key forms of medical assistance for which Plaintiff United States of America and Plaintiff State of Minnesota have paid millions of dollars annually under the joint Federal-State funded Medicaid program.

125.    The Minnesota Department of Human Services has created and adopted a Provider Manual regarding children's therapeutic services and supports to summarize, among other matters, the nature of children's therapeutic services and supports, the array of eligibility requirements for providers and recipients, and the scope of coverage.

126.    Attached hereto as Exhibit 25 and incorporated herein is a true and correct copy of the Minnesota Department of Human Services Provider Manual.

**Defendants' Provision Of Children's Therapeutic Services And Supports**

127.    Defendants employed Relator and has continued to employ many other mental health professionals or practitioners to provide children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions

128.    Children's therapeutic services and supports include without limitation

mental health services for children who require varying types of therapy or rehabilitation through an array of treatment modalities and combinations of services designed in accordance with the respective treatment plans of those children.

129.   Throughout his employment with Defendants from 2009 to 2012, Relator provided such children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions to numerous children.

130.   During his tenure, Relator performed on average approximately 15 service visits per week lasting around 2 hours to provide children's therapeutic services and supports and for which Defendants billed Plaintiff State of Minnesota.

131.   Before, during, and after Relator's tenure with Defendants, on information and belief, Defendants have employed in excess of 50 mental health professionals or practitioners at any given time to provide children's therapeutic services in essentially the same way and to the same extent as Relator did – and for which Defendants has billed Plaintiff State of Minnesota in essentially the same way.

**Legal Regime Governing Children's Therapeutic Services And Supports**

132.   The Federal legal regime generally delegates the implementation and regulation of the joint Federal-State funded Medicaid program to States, including the State of Minnesota.

133.   For example, 42 C.F.R. § 430.0 states as follows:  "Title XIX of the Social Security Act, enacted in 1965, authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children.  The program is jointly

financed by the Federal and State governments and administered by States.  Within broad

Federal rules, each State decides eligible groups, types and range of services, payment

levels for services, and administrative and operating procedures.  Payments for services

are made directly by the State to the individuals or entities that furnish the services."

134.   Chapter 256B of the Minnesota Code regulates the provision of – and

payment regarding – medical assistance for needy persons, including children's

therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and

related provisions, in connection with the joint Federal-State funded Medicaid program.

135.   Minn. Stat. § 256B.0943, Subd. 1(a) defines children's therapeutic services

and supports as follows: "'Children's therapeutic services and supports' means the

flexible package of mental health services for children who require varying therapeutic

and rehabilitative levels of intervention. The services are time-limited interventions that

are delivered using various treatment modalities and combinations of services designed to

reach treatment outcomes identified in the individual treatment plan."

136.   Chapter 256B of the Minnesota Code establishes that monies from Plaintiff

United States of America and Plaintiff State of Minnesota will be paid for the provision

of children's therapeutic services when certain conditions are met.

137.   Minn. Stat. § 256B.0943, Subd. 2(a) states as follows: "Subject to federal

approval, medical assistance covers medically necessary children's therapeutic services

and supports as defined in this section that an eligible provider entity certified under

subdivision 4 provides to a client eligible under subdivision 3."

138.   Chapter 256B of the Minnesota Code mandates that an entity comply with

extensive regulatory requirements before that entity will be designated as a certified children's therapeutic services and supports provider within the meaning of Minn. Stat. § 256B.0943, Subd. 2(a) and otherwise.

139.   Minn. Stat. § 256B.0943, Subd. 5 and Minn. Stat. § 256B.0943, Subd. 6, respectively, impose numerous administrative infrastructure obligations and clinical infrastructure obligations with which an entity must comply in order to be designated as a certified children's therapeutic services and supports provider.

140.   Chapter 256B of the Minnesota Code establishes the meaning of direct service time for purposes of providing children's therapeutic services and supports.

141.   Minn. Stat. § 256B.0943, Subd. 1(h) defines direct service time as follows: "'Direct service time' means the time that a mental health professional, mental health practitioner, or mental health behavioral aide spends face-to-face with a client and the client's family. Direct service time includes time in which the provider obtains a client's history or provides service components of children's therapeutic services and supports."

142.   Chapter 256B of the Minnesota Code also establishes what direct service time is not.

143.   Minn. Stat. § 256B.0943, Subd. 1(h) defines what direct service time is not as follows: "Direct service time does not include time doing work before and after providing direct services, including scheduling, maintaining clinical records . . . preparing reports . . . and revising the client's individual treatment plan."

144.   Chapter 256B of the Minnesota Code establishes what time can and cannot be billed to the State of Minnesota in connection with the provision of children's

therapeutic services and supports.

145.    Minn. Stat. § 256B.0943, Subd. 11(a) mandates as follows: "The provider entity may not bill for anything other than direct service time."

146.    To ensure clarity about, and compliance with, the restrictions on billing, Chapter 256B of the Minnesota Code states the precise scope of permissible billing when providing children's therapeutic services and supports.

147.    Minn. Stat. § 256B.0943, Subd. 12(7) mandates as follows: "The following services are not eligible for medical assistance payment as children's therapeutic services and supports *** activities that are not direct service time."

148.    Similarly, the regulatory regime promulgated by the Minnesota Department of Human Services makes clear for what time providers shall not bill.

149.    Minn. R. § 9505.0220 mandates as follows: "The health services in items A to X are not eligible for payment under medical assistance: *** W.  record keeping, charting, or documenting a health service related to providing a covered service. . . ."

150.    A provider that bills for time not actually eligible for medical assistance payment faces both civil sanctions and criminal prosecution above and beyond liability under the FFCA and the MFCA.

151.    Minn. R. § 9505.0460 establishes as follows: "A provider who wrongfully obtains a medical assistance payment is subject to Minnesota Statutes, sections 256B.064, 256B.121, 609.466, and 609.52; section 1909 of the Social Security Act; and parts 9505.2160 to 9505.2245."

**Defendants' Billing Regarding Children's Therapeutic Services And Supports**

152.   As a matter of policy, procedure, and practice, Defendants have billed for services not rendered for years regarding children's therapeutic services and supports within the meaning of Minn. Stat. § 256B.0943 and related provisions.

153.   During the orientation of Relator when his employment began in around September 2009, Relator's direct supervisor instructed Relator automatically to add 15 minutes of time for each service visit to be billed to Plaintiff State of Minnesota for, in sum or substance, "paperwork."

154.   Relator's Program Director, Ms. Luann Hanson, so directed Relator pursuant to Defendants' policies, procedures, and practices regarding billing in connection with the provision of children's therapeutic services and supports.

155.   In response, Relator insisted that billing for anything but direct service time would violate the law.

156.   Relator's Program Director nonetheless repeated the order that Relator fully comply with Defendants' unlawful billing policies, procedures, and practices.

157.   Throughout the remainder of her tenure as Program Director, Ms. Hanson, reiterated that order to Relator and other employees during regularly held staff meetings, in e-mail correspondence, and otherwise.

158.   The Program Director who replaced Ms. Hanson in approximately early 2011, Ms. Trish Reinecke, similarly ordered Relator and other employees automatically to add 15 minutes of time for each service visit to be billed to Plaintiff State of Minnesota for, in sum or substance, "paperwork."

159.    The new Program Director repeated these orders – pursuant to Defendants'
unlawful billing policies, procedures, and practices – during regularly scheduled staff
meetings, in e-mail correspondence, and otherwise.

160.    Attached hereto as Exhibit 26 and incorporated herein is a true and correct
copy of e-mail correspondence, dated April 12, 2011, from the Program Director to
employees about how to comply with Defendants' billing policies, procedures, and
practices.

161.    The Program Director repeated, in pertinent part, as follows in that
correspondence: "[R]emember that when you are writing a progress note, you should add
one unit to your billable units to account for your time spent case noting. So, if you spend
2 hours (8 units) with a client, you should put 9 units on your progress note – this
accounts for time spent with your client plus 15 minutes for you to do your case note."

162.    In continuing to order employees to comply fully with Defendants'
unlawful billing policies, procedures, and practices, the Program Director explained in
writing how employees should conceal the billing for services not rendered that
Defendants require of employees.

163.    Attached hereto as Exhibit 27 and incorporated herein is a true and correct
copy of e-mail correspondence, dated April 21, 2011, from the Program Director to
employees about how best to comply with Defendants' billing policies, procedures, and
practices.

164.    In that correspondence, the Program Director began with repeating
Defendants' policy, procedure, and practice of automatically billing for services not

rendered concerning direct service time in the amount of 15 minutes for each service visit wherein Defendants' employees provided children's therapeutic services and supports: "When you write a progress note, add one extra (15 min) unit to total units spent with the client to compensate for time spent writing the progress note."

165.   The Program Director then detailed how to conceal the fraudulent billing demanded of employees by Defendants: "Add 15 minutes to your time in/out as well – so, if the actual meeting is two hours (say 12 pm  to 2 pm), the time in/out should actually be written as 12 pm to 2:15 pm to match the units – number of minutes should match units."

166.   The Program Director further described how employees can make the fraudulent billing appear proper while still maximizing the amount of money unlawfully billed to Plaintiff State of Minnesota: "If you are billing multiple codes for the same visit (time spent includes both individual and family contact), you will add only one unit total for both notes to compensate for your progress note – you can [add] this unit to either code.  Many people add it to the family note b/c it's billed at a higher rate :)"

167.   In the course of repeating Defendants' unlawful billing policy, procedure, and practice of automatically billing for services not rendered concerning direct service time in the amount of 15 minutes for each service visit wherein Defendants' employees provided children's therapeutic services and supports, the Program Director made clear that Defendants require all employees to comply.

168.   Attached hereto as Exhibit 28 and incorporated herein is a true and correct copy of e-mail correspondence, dated July 28, 2011, from the Program Director to

employees about how to comply fully with Defendants' billing policies, procedures, and practices.

169.   In that correspondence, the Program Director confirmed as follows: "Due to an increase in billing errors (throughout all of CSS, not just our region), beginning next pay period, there will be a stricter policy in place regarding progress note errors. *** [R]emember to add one 15 minute unit to compensate for your time spent doing the progress note (only one unit allowed per client contact)."

170.   More recently, the Program Director has emphasized again both how employees must bill for services not rendered concerning direct service time and how such fraudulent billing is best concealed.

171.   Attached hereto as Exhibit 29 and incorporated herein is a true and correct copy of e-mail correspondence, dated April 12, 2012, from the Program Director to employees about how best to comply with Defendants' billing policies, procedures, and practices.

172.   In that correspondence, the Program Director repeated how to cover up the billing for services not rendered:  "You must include the extra 15 minutes (to compensate you for paperwork) in both the time in/time out section as well as in your units."

173.   The Program Director then addressed how to conceal the fraudulent billing in the context of rounding up time for billing purposes:  "On the progress note, you would round and you would add the extra 15 minute unit either to the beginning or the end time (if you visit two clients on the same day, make sure that the times do not overlap). . . ."

174.    The Program Director also explained further how to cover up the billing for services not rendered when Defendants' employees bill at the group rather than the individual rate: "If you are meeting with two or three clients at the same time, you must divide units and travel time among them evenly.  Unfortunately, the total time includes only one extra unit for pprwk so you would include this extra unit in the total time you spent with the clients (and then divide the total time by two or three)."

175.    During his tenure with Defendants, Relator complied with Defendants' unlawful billing policy, procedure, and practice of automatically billing for services not rendered concerning direct service time in the amount of 15 minutes for each service visit wherein Defendants' employees have provided children's therapeutic services and supports.

176.    By way of example, Relator billed for services not rendered concerning direct service time in the amount of 15 minutes for each service visit – as required by Defendants' billing policy, procedure, and practice – concerning the following recipients[1] of children's therapeutic services and supports:

- TV:  direct service from approximately September 2009 to February 2010 (2 times per week on average);

- DS:  direct service from approximately October 2009 to July 2012 (1 time per week on average);

- CB-D:  direct service from approximately October 2009 to August 2011 (1 to 2 times per week on average);

---

[1] Recipient initials rather than recipient names are used herein consistent with the Health Insurance Portability and Accountability Act and otherwise to protect recipient privacy.  Relator possesses the full name of each recipient, and Relator will produce the same in this case at the appropriate time pursuant to an adequate protective order.

- BA:  direct service from approximately October 2009 to February 2011 (2 times per week on average);

- NV:  direct service from approximately November 2009 to July 2012 (2 times per week on average);

- AK:  direct service from approximately April 2010 to July 2012 (1 to 2 times per week on average);

- ZC:  direct service from approximately May 2010 to July 2012 (1 to 2 times per week on average);

- KB:  direct service from approximately May 2010 to March 2011 (1 time per week on average);

- EG:  direct service from approximately July 2010 to July 2012 (2 times per week on average);

- JJ:  direct service from approximately January 2011 to July 2012 (2 times per week on average); and

- EH:  direct service from approximately October 2011 to May 2012 (2 times per week on average).

177.    Before, during, and after Relator's tenure with Defendants, as set forth more fully herein and on information and belief, Defendants' other employees have complied with Defendants' unlawful billing policy, procedure, and practice of automatically billing for services not rendered concerning direct service time in the amount of 15 minutes for each service visit wherein Defendants' employees have provided children's therapeutic services and supports.

178.    Based on this systematic billing for services not rendered concerning direct service time, as reflected by the progress notes prepared by Defendants' employees in connection with each service visit, Defendants have knowingly created and used false

and fraudulent billing records that are material to the presentation of knowingly false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota regarding Defendants' provision of children's therapeutic services and supports.

179.    Indeed, the substantial overpayment by Plaintiff United States of America and Plaintiff State of Minnesota over many years for Defendants' provision of children's therapeutic services and supports likely could not have occurred but for the false and fraudulent billing records knowingly created and used by Defendants to present knowingly false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota.

180.    Before, during, and after Relator's tenure with Defendants, as set forth more fully herein and on information and belief, Defendants have knowingly presented false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota pursuant to Defendants' unlawful billing policy, procedure, and practice of automatically billing for services not rendered concerning direct service time in the amount of 15 minutes for each service visit wherein Defendants' employees have provided children's therapeutic services and supports.

181. Defendants have knowingly presented false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota Defendants approximately twice a month and after the fraudulently inflated direct service time amount reported in the progress note for each service visit performed by Defendants' employees has been reviewed and approved by Defendant CSS's

President and Director.

182.  Defendants have knowingly presented these false and fraudulent claims, on information and belief, through the billing department's use of an electronic billing system available with the Minnesota Department of Human Services.

183.   Before, during, and after Relator's tenure with Defendants, as set forth more fully herein and on information and belief, Defendants have knowingly conspired to create and use knowingly false and fraudulent records that are material to the presentation of knowingly false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota regarding Defendants' provision of children's therapeutic services and supports.

184.   Before, during, and after Relator's tenure with Defendants, as set forth more fully herein and on information and belief, Defendants also have knowingly conspired to present knowingly false and fraudulent claims for approval and payment by Plaintiff United States of America and Plaintiff State of Minnesota regarding Defendants' provision of children's therapeutic services and supports.

**Damage To The Public Caused By Defendants' Willful And Ongoing Conduct**

185.   Defendants have developed, approved, implemented, and enforced their continuing billing policies, procedures, and practices, as set forth more fully herein, with specific intent to defraud Plaintiff United States of America and Plaintiff State of Minnesota as well as with reckless disregard for the public welfare.

186.   Directly and solely because of Defendants' conduct, Plaintiff United States of America and Plaintiff State of Minnesota have overpaid Defendants substantial monies

for years regarding the provision of children's therapeutic services and supports.

187.    Such extensive overpayment, especially during a time of persistent budget deficits for both Plaintiff United States of America and Plaintiff State of Minnesota, has caused actual damage to the public.

## FIRST CAUSE OF ACTION:
## VIOLATIONS OF THE FEDERAL FALSE CLAIMS ACT

188.    Relator restates and realleges the allegations contained herein above.

189.    Defendants' policies, procedures, and practices violate 31 U.S.C. § 3729(b) in that, by said means, Defendants knowingly have made and used – and have caused to be made and used – false records and statements that are material to false and fraudulent claims knowingly presented and caused to be presented to Plaintiff United States of America for approval and payment.

190.    Defendants' policies, procedures, and practices also violate 31 U.S.C. § 3729(a) in that, by said means, Defendants have knowingly presented – and have caused to be presented – false and fraudulent claims for approval and payment by Plaintiff United States of America.

191.    Defendants' policies, procedures, and practices further violate 31 U.S.C. § 3279(c) in that, by said means, Defendants have knowingly conspired to violate 31 U.S.C. § 3729(a) and 31 U.S.C. § 3729(b).

## SECOND CAUSE OF ACTION:
## VIOLATIONS OF THE MINNESOTA FALSE CLAIMS ACT

192.    Relator restates and realleges the allegations contained herein above.

193.    Defendants' policies, procedures, and practices violate Minn. Stat. §
15C.02(a)(2) in that, by said means, Defendants have knowingly made and used – and
have caused to be made and used – false records and statements that are material to
obtaining approval and payment of knowingly false and fraudulent claims by Plaintiff
State of Minnesota.

194.    Defendants' policies, procedures, and practices also violate Minn. Stat. §
15C.02(a)(1) in that, by said means, Defendants have knowingly presented – and have
caused to be presented – to Plaintiff State of Minnesota false and fraudulent claims for
approval and payment by Plaintiff State of Minnesota.

195.    Defendants' policies, procedures, and practices further violate Minn. Stat. §
15C.02(a)(3) in that, by said means, Defendants have knowingly conspired to present
false and fraudulent claims to Plaintiff State of Minnesota for approval and payment and,
moreover, have made and used – and have caused to be made and used – false records
and statements to obtain approval and payment of knowingly false and fraudulent claims
by Plaintiff State of Minnesota.

## JURY DEMAND

Pursuant to Fed. R. Civ. P. 38 and Minn. R. Civ. P. 38, Relator hereby demands
trial by jury of all issues properly triable thereby.

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully requests that this Court provide the following
relief:

A. Declaring, adjudging, and decreeing that Defendants have engaged in the violations of law set forth herein;

B. Enjoining Defendants such that they immediately and permanently cease violating the FFCA and the MFCA;

C. Retaining jurisdiction over Defendants until such time as this Court determines that Defendants have fully and permanently remedied their improper policies, procedures, and practices;

D. Entering judgment against Defendants, which are jointly and severally liable, for three times the total amount of damages sustained by Plaintiff United States of America and Plaintiff State of Minnesota because of Defendants' conduct;

E. Awarding to Relator the maximum recovery amounts allowed under the FFCA and MFCA, whether such award is made in connection with settlement or judgment in the case;

F. Reimbursing Plaintiffs and Relator for all costs incurred in this action, including without limitation all reasonable attorney's fees and expert witness expenses;

G. Imposing the maximum penalty of $11,000 for each violation of 31 U.S.C. § 3729 and of $11,000 for each violation of Minn. Stat. § 15C.02;

H. Awarding pre- and post-judgment interest on all of the foregoing amounts; and

I. Granting all other relief as may be just and appropriate.

Dated:  April 30, 2013          **CUMMINS & CUMMINS, LLP**


Justin D. Cummins, #276248
1245 International Centre
920 Second Avenue South
Minneapolis, MN 55402
612.465.0108
justin@cummins-law.com

**ATTORNEYS FOR RELATOR**